IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STEVEN WILLETTE,

                              Petitioner,

                                                      Civil Action No.
                    v.                                9:02-CV-1071 (DNH/DEP)

BRIAN FISCHER,

                              Respondent.

_____

APPEARANCES:                    _____OF COUNSEL:

FOR PETITIONER:

OFFICE OF LIVINGSTON L. HATCH    LIVINGSTON L. HATCH, ESQ.
P.O. Box 345
1790 Main Street
Keeseville, NY 12944

FOR RESPONDENT:

HON. ELIOT SPITZER               RISA L. VIGLUCCI, ESQ.
Office of Attorney General       Assistant Attorney General
New York State Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Petitioner Steven Willette, a New York State prison inmate as a

result of a 1999 conviction of four counts of offering a false instrument in the first degree and four counts of failing to notify law enforcement agents of a change of address as required under New York's Sex Offender Registration Act, N.Y. Correction Law §§ 168 *et seq.* ("SORA" or "the Act"), has commenced this proceeding seeking habeas relief pursuant to 28 U.S.C. § 2254. Represented by counsel, petitioner asserts a single ground in support of his request for habeas intervention, arguing that because his level of risk under the SORA was never judicially determined, and therefore resulted in a denial of due process, his conviction, which turns on that constitutionally infirm risk level assignment, is invalid.

Applying the requisite deferential standard to the argument now raised, which was presented to and rejected by the state courts on direct appeal of his conviction, I recommend that Willette's habeas petition be granted with respect to the four counts charging reporting violations under the SORA, but otherwise denied.

I.     BACKGROUND

In or about 1985 petitioner was convicted, following a jury trial, of two counts of first degree sexual abuse and was sentenced as a second felony offender to two consecutive indeterminate sentences of three and

2

one-half to seven years on those counts.  That earlier conviction stemmed from sexual contact between Willette and a social acquaintance's four year old daughter on two occasions in 1983.  Petitioner's conviction was affirmed by the New York State Supreme Court Appellate Division, Third Department, on June 13, 1985.  *See People v. Willette*, 109 A.D.2d 112, 490 N.Y.S.2d 290 (3d Dept. 1985).  Willette was released from custody on September 26, 1995, and placed under the supervision of the New York State Division of Parole for the six years remaining on his combined prison term.[1]  *See* Respondent's Appendix on Appeal ("Resp. App.") at RA2-4.

On July 25, 1995, the New York Legislature enacted the SORA, New York's version of "Megan's Law"; that provision became effective on January 21, 1996.  *See Doe v. Pataki*, 120 F.3d 1263, 1266 (2d Cir. 1997), *cert. denied*, 522 U.S. 1122, 118 S.Ct. 1066 (1998).  The SORA requires any individual convicted in New York of one of the listed sex or sexually violent offenses to provide local law enforcement agents with identifying information, including his or her name, date of birth, sex, race, height, weight, driver's license number and home address.  *Doe*, 120 F.3d

---

[1]    Petitioner's 1985 conviction resulted in a revocation of probation stemming from an earlier conviction and an additional, consecutive sentence of two and one-third to seven years for that probation violation.

at 1266-67 & n.4.  By their terms, the provisions of the SORA apply both prospectively to individuals convicted of sex offenses following its enactment and retroactively to sex offenders who were either on parole or incarcerated as of its effective date.  *Id.* at 1266.

The Act creates three distinct "levels" of sex offenders who are subjected to varying registration requirements under its provisions, depending upon the assigned level.  An offender is designated as falling into one of those three categories based upon an assessment of his or her particular risk of recidivism.  *Doe*, 120 F.3d at 1268.  Individuals determined to pose a "low" risk of re-offending are classified as level one offenders; those whose risk of re-offending is deemed to be "moderate" are assigned a level two designation; and individuals believed to pose the greatest risk of re-offense are categorized as level three offenders.  *Doe*, 120 F.3d at 1268-70.  As one might anticipate, the greater the perceived risk to the public safety, the more stringent the reporting requirements and corresponding provisions governing the dissemination of and public access to an offender's registration information under the SORA.  *Id.*

A sex offender registration form – apparently completed by his parole officer, James J. Murray – was provided to the petitioner, who

4

signed the document on February 8, 1996 acknowledging its receipt and

the notice contained within that document regarding the sex offender

registration requirements.  Resp. App. at RA5-6.  On its face, that form

lists petitioner's designation as a level three offender, and reflects that

Willette resided at 515 Orebed Road, Redford, New York 12978 – an

address which, the testimony at trial revealed, corresponded with the

home of petitioner's father.[2]  *See* Transcript of Trial of Steven Willette

(9/20/99) ("Trial Tr.") at 670 (testimony of Arthur Willette indicating that his

son Steven began living at Arthur Willette's Redford, New York residence

in September, 1995).

In March of 1996, Willette claims to have learned for the first time

that he had been designated a level three sex offender by the State of

New York, thereby placing him in the highest risk category as a sexually

violent predator.[3]  Trial Tr. at 429-30; *see* N.Y. Correction Law § 168-l

(6)(c).  In light of that designation Parole Officer Murray, who was charged

with ensuring Willette's compliance with the SORA, Trial Tr. at 407-09,

---

[2]     The completed registration form was filed with the New York Division
of Criminal Justice Services ("DCJS").

[3]     Petitioner testified at trial that the level three designation was placed
on the February, 1996 sex offender registration form sometime after he signed it.
*See* Trial Tr. at 699-700.

5

advised petitioner of his duty to inform the Clinton County Sheriff's

Department of his current residence every ninety days.[4]  Trial Tr. at 439.

In accordance with that directive, at ninety day intervals from August, 1997

through November of 1998, Willette periodically reported to law

enforcement agents that he continued to reside with his father at the

Orebed Road residence in Redford, New York.  *See* Trial Tr. at 409-14;

Resp. App. at RA20-25.

In November of 1998, Parole Officer Murray was informed by an

employee of the New York State Police that Willette had been living at a

home located in Peru, New York.  Trial Tr. at 415.  Parole Officer Murray

then proceeded to the address provided to him by law enforcement

officials, where he spoke with the owner of the residence, Julia Turner.[5]

Trial Tr. at 415-16.  In response to his inquiries, Turner advised Murray

that at her request, Willette had moved into her home in July of 1997,

---

[4]      Under the Act, a level three offender is required to advise local law enforcement agencies of his or her current address every ninety days, a requirement which extends for ten years.  *Doe*, 120 F.3d at 1284-85 (citing N.Y. Correction Law § 168-f(3)) (other citation omitted).  The SORA permits distribution by law enforcement agencies of a level three offender's information, including his or her exact address and a photograph, to "vulnerable populations."  N.Y. Correction Law § 168-l (6)(c).

[5]      At the time, Turner was living with her son and daughter, both of whom were minors.  Trial Tr. at 417.

where he continued to reside with her and her children until moving out in September of the following year.  Trial Tr. at 584-91.

Parole Officer Murray testified that although he met with Willette on a regular basis from February, 1997 until November of 1998, he was never informed that the petitioner had changed his residence from the Redford, New York address listed on both his notice of registration and his subsequent filings with the Clinton County Sheriff's Department, notwithstanding the fact that the two had spoken about petitioner's residence each time they met.  Trial Tr. at 419.

In his defense to the charges against him, Willette testified that although he spent numerous evenings at Turner's home, he believed that his only residence was located on Orebed Road in Redford, New York. Trial Tr. at 691-96.

## II.   PROCEDURAL HISTORY

### A.   State Court Proceedings

On February 5, 1999, a Clinton County grand jury returned an indictment against Willette charging him, *inter alia*, with five counts of filing a false instrument in the first degree, all in violation of New York Penal

Law § 175.35.[6]  *See* Indictment No. 99-5.  The remaining counts in the

indictment charged that Willette had failed to inform the Clinton County

Sheriff's Department of his new residence as required under New York

Correction Law § 168-f(4).[7]

Willette was ultimately tried in connection with the charges set forth

in the indictment before a jury in Clinton County Court, beginning on

September 23, 1999, with Clinton County Court Judge Patrick McGill

presiding.  At the conclusion of that trial, Willette was found guilty on all

counts submitted to the jury.[8]  Trial Tr. at 915-18.  As a result of the jury's

---

[6]    Specifically, the indictment charged Willette with misrepresenting his address on forms filed with the Clinton County Sheriff's Department pursuant to the SORA on August 14, 1997, November 14, 1997, February, 1998, May 19, 1998 and November 14, 1998.  *See* Indictment, Grounds One, Three, Five, Seven and Nine.

[7]    At the relevant time that statute provided, in pertinent part, that

> [a]ny sex offender shall register with the [DCJS] within
> ten calendar days prior to any change of address. ...  If
> any person required to register as provided in this article
> changes the address of his residence, the sex offender
> shall within ten calendar days, inform in writing the law
> enforcement agency where last registered of the new
> address.

*See* (former) Correction Law § 168-f(4).  Although this provision was rewritten by the Legislature in an enactment signed into law by the Governor in 2002, *see* L.2002, ch. 11, § 11, that legislative revision is not germane to the present action.

[8]    Prior to submission of the charges to the jury, with the consent of the District Attorney, the trial court dismissed counts nine and ten of the indictment, which alleged that 1) Willette had filed a false instrument with the Clinton County Sheriff's Department on November 14, 1998; and 2) such filing constituted a failure

verdict, on November 8, 1999 petitioner was sentenced by Judge McGill to six months imprisonment on his first conviction for failing to report his change of address under the SORA, which sentence was ordered to run concurrently with the three and one-half to seven year consecutive terms of imprisonment to which Willette was sentenced on his three remaining SORA convictions.[9]  *See* Sentencing Transcript (11/8/99) ("Sentencing Tr.") at 14.  Willette was also sentenced to consecutive terms of imprisonment of two to four years on each of his four false instrument filing convictions.  Sentencing Tr. at 15.  Those latter sentences were ordered to run concurrently with the other sentences imposed, resulting in an aggregate sentence of ten and one-half to twenty-one years of imprisonment.  Sentencing Tr. at 15.

Willette appealed his conviction and sentence to the Third Department.  Through counsel, petitioner argued in his appeal that 1) his

---

on the part of Willette to comply with the SORA's registration requirements.  Trial Tr. at 751-53.  That dismissal was based upon testimony at trial revealing that Willette moved out of the Turner residence in September, 1998.  Trial Tr. at 591.

[9]      The differentiation in sentences imposed on the first SORA count, and those associated with the remaining three, stems from the fact that under the Act, a first violation of the reporting requirements of section 168-f(4) is designated as a misdemeanor, with a corresponding maximum prison term of six months, whereas ensuing violations by a recidivist are designated as Class D felonies.  *See* N.Y. Correction Law § 168-t.

prosecution for violating the terms of the SORA was invalid because his

risk level under that act was never judicially determined; 2) the indictment

was facially defective; and 3) the jury failed to follow the trial court's

instructions in rendering its verdict.  *See* Brief in Support of Appeal

(7/23/01) ("App. Br.") at 13-23.  The Third Department issued a decision

on January 3, 2002 rejecting each of petitioner's contentions on the

merits, and unanimously affirming his conviction and sentence.  *See*

*People v. Willette*, 290 A.D.2d 576, 735 N.Y.S.2d 645 (3d Dept. 2002).

On March 27, 2002, the New York Court of Appeals denied Willette's

application for  leave to appeal the Appellate Division's decision.  *People*

*v. Willette*, 97 N.Y.2d 763, 742 N.Y.S.2d 624 (2002).

      B.   <u>This Proceeding</u>

Willette commenced this matter on August 19, 2002.  Petition (Dkt.

No. 1) at 1.  In his petition, Willette claims that his convictions are tainted

because his risk level under the SORA was never judicially determined.

*Id.* at 5.  The New York State Attorney General, acting on respondent's

behalf, has opposed Willette's petition by filing an answer and a

memorandum of law, arguing that the claims raised in the petition are

without merit.  *See* Dkt. Nos. 6, 7.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d

11

Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003);

*Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also

requires that in any such proceeding "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant

shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403

F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal

quotations omitted).

    The Second Circuit has provided additional guidance concerning

application of this test, noting that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court can grant
> habeas relief: 1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled? 2)
> If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? 3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*

*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

    Because the AEDPA's restriction on federal habeas power is

premised in no small part upon the duty of state courts to uphold the

12

Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court.  *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits.  *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

In *Sellan*, the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim.  Specifically, that court held that deference is required if the federal claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law.  *Sellan*, 261 F.3d at 311-12.  As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed

13

> by 28 U.S.C. § 2254(d)(1) to the state court's
> decision on the federal claim – *even if the state
> court does not explicitly refer to either the federal
> claim or to relevant federal case law.*"

*Sellan*, 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller*, 303

F.3d 231, 246 (2d Cir. 2002).[10]

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a

case differently than the Supreme Court on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120

S.Ct. 1495, 1523 (2000). Moreover, a federal court engaged in habeas

review must also determine not whether the state court's determination

was merely incorrect or erroneous, but instead whether it was "objectively

unreasonable". *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also

Sellan*, 261 F.3d at 315. The Second Circuit has noted that this inquiry

admits of "[s]ome increment of incorrectness beyond error", though "the

---

[10]    In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA's deference standard. *Sellan*, 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

increment need not be great[.]"  *Francis S.*, 221 F.3d at 111.

### B.   Review of Willette's Claim

In support of his claim, petitioner notes that prior to the resolution of his direct appeal, the New York State Court of Appeals determined that the procedure implemented by the Division of Probation and Correctional Alternatives ("DPCA") to assess a convicted sex offender's level of risk under the SORA resulted in the denial of due process.  *See* Petition (Dkt. No. 1) at attached (unnumbered) 5A; *see also People v. David W.*, 95 N.Y.2d 130, 139, 711 N.Y.S.2d 134, 140 (2000).  Petitioner argues that because there has never been any judicial determination regarding his categorization as a level three sex offender under the SORA, he was not properly found guilty of, or sentenced on, any of the charges in the indictment.  *See* Petition (Dkt. No. 1) at attached (unnumbered) 5a.

### 1.   Clearly Established Supreme Court Precedent

Where the State seeks to deprive an individual of his or her liberty, due process mandates that the State provide effective procedures that guard against an erroneous deprivation of such liberty.  U.S. Const., amend. V, XIV;[11] *Mathews v. Eldridge*, 424 U.S. 319, 334-335, 96 S.Ct.

---

[11]   The Fifth Amendment to the United States Constitution has been rendered applicable to the States through the Fourteenth Amendment.  *McEachin*

893, 902 (1976).  Thus, when a petitioner establishes that the criminal

proceedings which resulted in his or her incarceration were "fundamentally

lawless", the sentence imposed on the individual following such a

proceeding "is not merely erroneous but void."  *Fay v. Noia*, 372 U.S. 391,

423, 83 S.Ct. 822, 840 (1963).  Although due process requires that the

State prove every element of a criminal offense beyond a reasonable

doubt, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970), due

process does not afford individuals a right to establish facts that are not

material to the statute under which he or she is being prosecuted.

*Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 6, 123 S.Ct. 1160,

1164 (2003).  Moreover, it is clear that when interpreting state statutes,

federal courts must defer to state courts' interpretation of their own laws.

*Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76, 121 S.Ct.

471, 473 (2000) (per curiam) ("As a general rule, this Court defers to a

state court's interpretation of a state statute.").

### 2.  Contrary to, or Unreasonable Application of, Supreme Court Precedent

The centerpiece of petitioner's due process argument is the New

_____

*v. Selsky*, No. 04-CV-83, 2005 WL 2128851, at *3 (N.D.N.Y. Aug. 30, 2005)
(Scullin, C.J.).

York Court of Appeals' decision in *David W.*  Since petitioner's arguments must be evaluated against the backdrop of that decision, it is worthwhile briefly to discuss the case, its rationale, and import insofar as relates to Willette's conviction.

In *David W.*, the appellant had been found guilty of engaging in sexual contact with two underage victims, and was on probation following that conviction at the time of the SORA's enactment.  *David W.*, 95 N.Y.2d at 134, 711 N.Y.S.2d at 136.  The defendant was notified that he had been designated a level three offender under the SORA, and was informed of his corresponding reporting obligations under that Act.  *David W.*, 95 N.Y.2d at 134, 711 N.Y.S.2d at 136-37.  On advice of counsel, the defendant refused to sign and return his initial SORA registration form, and instead filed a legal challenge regarding his risk level classification. *David W.*, 95 N.Y.2d at 134-35, 711 N.Y.S.2d at 137.  The DPCA thereafter informed David W. that it was upholding his classification as a level three offender, as being proper under the circumstances.  *David W.*, 95 N.Y.2d at 135, 711 N.Y.S.2d at 137.  When the defendant again refused to sign the form classifying him as a level three offender, he was prosecuted and ultimately convicted of failing to register as provided for

17

under the SORA.  *David W.*, 95 N.Y.2d at 135-36, 711 N.Y.S.2d at 137-38.

On appeal, the Court of Appeals reversed David W.'s conviction, concluding in its decision that he had not been not afforded the process he was due in affixing his SORA risk level.  *David W.*, 95 N.Y.2d at 136, 711 N.Y.S.2d at 138.  In so ruling, the Court of Appeals determined that due process deficiencies existed with respect to the manner in which David W. was assigned his risk level, noting that

> [d]efendant did not receive notice that his risk level
> was being determined, was not informed of what
> materials would be relied upon in making that
> determination and was not afforded an opportunity
> to present his objections to the State's
> characterization of his behavior and history before
> the key decision was unilaterally made.

*David W.*, 95 N.Y.2d at 139, 711 N.Y.S.2d at 140.  In concluding that the criminal information charging David W. with failing to register under the SORA must be dismissed, the Court of Appeals held that

> [d]ue process requires that the State bear the
> burden of proving, at some meaningful time, that a
> defendant deserves the classification assigned.
> Here, the State did not bear the burden of proof at
> any proceeding before a neutral fact finder.
> Defendant may or may not deserve a risk level
> three classification, but without any notice and an
> opportunity to be heard before a determination is

18

> made, the risk level determination made below
> failed to comport with minimum State and Federal
> constitutional requirements of due process.

*David W.*, 95 N.Y.2d at 140, 711 N.Y.S.2d at 141.[12]

Addressing the import of the Court of Appeals' decision in *David W.*
in the context of Willette's direct appeal, the Appellate Division
acknowledged that the holding in *David W.* rendered Willette's
classification as a level three offender "constitutional[ly] infirm". *Willette*,
290 A.D.2d at 577, 735 N.Y.S.2d at 646. The Appellate Division
nevertheless determined that the court's holding in *David W.* did not
"impact upon the validity of the criminal convictions being reviewed."
*Willette*, 290 A.D.2d at 577, 735 N.Y.S.2d at 646. In support of that
conclusion, the Appellate Division noted that Willette had not been
"prosecuted for a failure to report as a level three offender; rather, he was
prosecuted for a failure to report his change of address and for his filing of
false instruments." *Id.* The Third Department went on to observe that

---

[12]    The level of deference owed by this court to the state courts' finding of
a due process violation under the AEDPA is unclear. The issue is further
complicated by consideration of an intervening decision from the United States
Supreme Court in *Doe*, 538 U.S. 1, 123 S. Ct. 1160, which, the respondent argues,
potentially casts doubt upon the continuing vitality of *David W.* In light of my
determination that petitioner's conviction of four separate counts of failing to notify
proper authorities on four separate occasions of a single change of address runs
afoul of the Fifth Amendment's double jeopardy clause, I find it unnecessary to
resolve those potentially complex issues.

"[e]ven if [Willette] had been designated a level one offender, he would still have been obligated to register [under the Act] annually for a 10-year period and notify local law enforcement if he moved." *Id.*

Petitioner was convicted of four counts of filing of false instruments, and four counts of failing to notify of a change of address as required under the SORA. Analysis of those convictions, in the face of Willette's petition and in view of the Court of Appeals' decision in *David W.,* varies depending upon which of these categories is at issue. Consequently, the two groupings of convictions will be addressed separately.

a.   Filing a False Instrument in the First Degree

Petitioner's challenge to his false instrument filing convictions does not turn upon a claim that he did not file false instruments within the meaning of the governing penal provision. Instead, Willette argues that because he should not have been required to report his address every ninety days, since the validity of his level three status was undermined by the Court of Appeals' decision in *David W.*, and clearly he would not have filed the false instruments at issue at ninety day intervals absent the compulsion of that statute, his convictions should be overturned. Petition (Dkt. No. 1) at (unnumbered) 5A. In its determination of petitioner's direct

20

appeal the Appellate Division rejected that claim, finding

> no error in the verdict convicting defendant of four
> counts of offering a false instrument for filing in the
> first degree.   Penal Law § 175.35 provides that "[a]
> person is guilty of offering a false instrument for
> filing in the first degree when, knowing that a
> written instrument contains a false statement or
> false information, and with intent to defraud * * * he
> offers or presents it * * * with the knowledge or
> belief that it will be filed"....  [A] finding as to
> whether defendant was required to file such
> instrument is irrelevant to the determination that
> the instrument filed was false.

*Willette*, 290 A.D.2d at 578, 735 N.Y.S.2d at 646.  That court further held

that because "the evidence wholly support[ed] the jury's conclusion that

[Willette's] actions mirrored the terms of the statute", Willette's convictions

on the false instrument charges were proper.  *Willette*, 290 A.D.2d at 578,

735 N.Y.S.2d at 646.  I must therefore determine whether these

conclusions of the Appellate Division are either contrary to, or represent

an unreasonable application of, relevant Supreme Court precedent.  When

engaging in that exercise, I must heed the admonition, mentioned earlier

but worthy of reiteration, to the effect that "[i]t is axiomatic ... that when

interpreting state statutes federal courts defer to state courts'

interpretation of their own statutes."  *United States v. Fernandez-Antonia*,

278 F.3d 150, 162 (2d Cir. 2002) (citing *Bush*, 531 U.S. at 76, 121 S.Ct.

at 473) (other citation omitted).

Fatal to petitioner's challenge to the legitimacy of his false

instrument filing convictions is the underlying fact that the statute under

which he was prosecuted does not contain any requirement that an

individual charged with filing the false instrument have been under a legal

duty to file such document.[13]   *See* N.Y. Penal Law § 175.35; *Willette*, 290

A.D.2d at 578, 735 N.Y.S.2d at 646; *see*, *e.g.*, *People v. Scutt*, 19 A.D.3d

1131, 796 N.Y.S.2d 816 (4th Dept. 2005) (affirming conviction of filing a

false instrument wherein appellant falsely claimed in instrument that his

daughter resided with him in order to obtain Medicaid benefits); *People v.*

*Hure*, 16 A.D.3d 774, 790 N.Y.S.2d 591 (3d Dept.) (upholding conviction

on four counts of offering a false instrument for filing in the first degree

where defendant fraudulently obtained public assistance, Medicaid and

food stamps by filing false instruments with New York's Department of

Social Services), *leave denied*, 4 N.Y.3d 854, 797 N.Y.S.2d 428 (2005);

*People v. Latour*, 11 A.D.3d 819, 783 N.Y.S.2d 429 (3d Dept. 2004)

(affirming conviction on two counts of first degree filing a false instrument

---

[13]      Petitioner has not cited, nor has this court located, any case in which
a court in the State of New York has engrafted such an additional statutory element
into N.Y. Penal Law § 175.35.

22

where documents filed by defendant were used to apply for and obtain a

passport, driver's license, and Social Security card), *leave denied*, 4

N.Y.3d 800, 795 N.Y.S.2d 175 (2005).  Thus, as the Appellate Division

correctly concluded, the fact that Willette may not have been properly

required to file the instruments that formed the basis of the false

instrument charges was neither a defense to those charges nor a ground

upon which his appeal of his conviction could have properly been

granted.[14]

Since the record conclusively establishes that Willete filed all of the

documents giving rise to the false instrument charges, I alternatively

consider whether the other evidence adduced at trial was so lacking so as

to render his conviction on those charges a denial of his federal due

process rights.  In New York, a defendant may only be found guilty of

offering a false instrument for filing in the first degree where the

prosecution establishes that he or she "knew that a written instrument

contained false information, had the intent to defraud the state and offered

---

[14]      Even had petitioner been designated as a level one or two sex
offender, he still would have been required to report his residence yearly.  Since the
time spent by him living with his girlfriend extended from July, 1997 until September
of 1998, in all likelihood petitioner would have committed at least one, and
potentially two, violations of filing a false instrument even had he been designated
as a level one or two offender.

23

the instrument to a public office with knowledge or belief that it would be filed." *People v. Hure*, 16 A.D.3d 774, 775, 790 N.Y.S.2d 591, 592 (3d Dept. 2005) (citing N.Y. Penal Law § 175.35 and *People v. Stumbrice*, 194 A.D.2d 931, 932, 599 N.Y.S.2d 325[, 326 (3d Dept.)], *lv. denied* 82 N.Y.2d 727, 602 N.Y.S.2d 824 (1993)); *see also Norman v. Hynes*, 20 A.D.3d 125, 132, 799 N.Y.S.2d 222, 227 (2d Dept. 2005) (citation omitted).

At petitioner's trial, the prosecution overwhelmingly established that he was guilty of the false instrument charges arising out of the documents filed by him with the Sheriff's Department in August, 1997, November, 1997, February, 1998 and May, 1998. On each of those occasions, Willette filed a "Sex Offender Change of Address Form" which indicated his address as being on Orebed Road in Redford, New York. *See* Resp. App. at RA20-23; *see also* Trial Tr. at 409-11. The testimony at trial, however, clearly established that during that period of time Willette was living with Turner in Peru, New York. Trial Tr. at 584-91. Indeed, Willette himself candidly admitted on cross-examination that during the period of time between July, 1997 through September, 1998, he had spent approximately 320 nights at Turner's residence. Trial Tr. at 717. In light of this testimony, there was a sufficient basis for the jury's finding that

Willette was guilty of the false instrument charges asserted in counts one, three, five and seven of the indictment.  I therefore find that the Appellate Division's decision denying this aspect of Willette's appeal was neither contrary to, nor an unreasonable application of, the relevant Supreme Court precedent discussed above.

> b.   Failure to Report a Change of Address Under the SORA

The far more troublesome element of petitioner's conviction relates to the jury's finding that he violated N.Y. Correction Law § 168-f(4) by failing to notify law enforcement officials of his new address on forms filed by him in August, 1997; November, 1997; February, 1998; and May, 1998. In denying this claim in the context of Willette's direct appeal, the Appellate Division concluded that

> [a]s to the finding that defendant failed to properly register under the Act due to his failure to abide by the mandates of Correction Law § 168-f (4), such section clearly requires, *inter alia*, that "[i]f any person required to register ... changes the address of his residence, the sex offender shall ... inform in writing the law enforcement agency where last registered of the new address."  As the evidence at trial included the testimony of a woman and her two children with whom defendant resided in the Village of Peru, Clinton County, we find the jury to have properly concluded that defendant moved to a new residence and failed to inform the local authorities

25

thereof.

*Willette*, 290 A.D.2d at 577-78, 735 N.Y.S.2d at 646.  I am therefore charged with determining whether that determination was either contrary to, or represents an unreasonable application or, the above-referenced Supreme Court precedent.

The gist of the Appellate Division's decision is that while petitioner's due process rights may have been violated by designating him as a level three offender, that designation did not undermine his conviction, the court noting as follows: ". . . we emphasize that [Willette's] level three designation is not relevant to [the determination that he violated N.Y. Correction Law § 168-f(4)]."  *Willette,* 290 A.D.2d at 578, 735 N.Y.S.2d at 646.  Unlike the Third Department, I am unable to conclude that petitioner's SORA convictions are readily divorced from his level three determination.   In essence, petitioner was accused and convicted of four times changing his residence without complying with the requirement under section 168-f(4) that he notify officials of any such change with ten days.  The proof at trial, however, reflects that during the relevant time period Willette changed his residence twice, at most – once upon moving in with his girlfriend, and a second time when moving out.

26

The fact that petitioner was convicted of four counts of failing to notify of a change of address when in fact he moved only twice is solely the result of the filings made by him at ninety day intervals, the dates specified in the SORA counts of the indictment corresponding exactly with the dates upon with Willette's ninety day reports were filed.  Those filings, in turn, were the direct result of petitioner's level three designation, and would not have been made but for that designation, which, the State concedes and the Appellate Division acknowledged, was "constitutional[ly] infirm." *See Willette,* 290 A.D.2d at 577, 735 N.Y.S.2d at 646.  To allow petitioner's convictions to stand would be to impermissibly inflate a single, or at most two, violations for failure to report changes of address into multiple convictions based upon circumstances which, the New York Court of Appeals has concluded, were the product of a due process violation. Given that by statute, a first offense under section 168-f(4) gives rise only to a maximum prison term of six months, as distinct from subsequent violations, which are designated as Class D felonies, and petitioner received consecutive sentences on three of those convictions, the expansion of one or two reporting violations into four separate counts

27

resulted in significant, adverse consequences for the petitioner.[15]

At oral argument on Willette's petition, respondent's attorney asserted that by continuing to reside at a new address without providing authorities of information regarding that change, petitioner was in essence guilty of a continuing violation, with each day potentially giving rise to a new charge.  Respondent argues, in essence, that by only having been charged on four occasions over the period of a year for failing to provide the requisite address change notice, petitioner was fortunate.  The theory now espoused by the respondent implicates concerns of multiplicity.  "An indictment is multiplicious if it charges the same crime in two counts." *United States v. Ansaldi,* 372 F.3d 118, 124 (2d Cir.), *cert. denied,* ___ U.S. ___, 125 S. Ct. 364 (2004) (*citing United States v. Handakas*, 286 F.3d 92, 97 (2d Cir. 2002), *overruled in part on other grounds, United States v. Rybicki,* 354 F.3d 124, 144 (2d Cir. 2003) (*en banc*).  When a jury may convict on two arguably multiplicious counts, giving rise – as was

---

[15]   The confusion in some quarters regarding the precise nature of the SORA violations charged in counts two, four, six and eight of the indictment could be partly attributable to the fact that some of Willette's ninety day reports were filed utilizing a form designated as "Sex Offender Change of Address Form," *see* Resp. App. at RA 20, 21, 23, and 25, while others were completed on what appears to be the more appropriate "Level 3 Sex Offender 90 Day Address Verification Form." Resp. App at RA 22 and 24.

the case in this instance – to the possibility of two separate punishments for the same crime, a violation of the double jeopardy clause of the Fifth Amendment is potentially presented. *Ansaldi,* 372 F.3d at 124; *United States v. Chacko,* 169 F.3d 140, 145 (2d Cir. 1999).

The charging of multiple offenses based upon the same conduct does not *per se* violate the double jeopardy clause. *United States v. Cavanaugh,* 948 F.2d 405, 412 n.8 (8th Cir. 1991) (*citing Ohio v. Johnson,* 467 U.S. 443, 449, 104 S. Ct. 2536, 2540-41 (1984)). Instead, the question becomes whether, by enacting the statutory provision, the respective legislative body intended that facts underlying the potentially overlapping counts constitute separate "'units' of prosecution". *Ansaldi,* 372 F.2d at 125 (*citing Bell v. United States,* 349 U.S. 81, 83-84, 175 S. Ct. 620, 622 (1955)). In this instance, there is nothing in the legislative history which underlies the SORA, and in particular section 168-f(4), to suggest the Legislature's intent that on the eleventh day after moving without providing the requisite notification, a sex offender subject to its reporting requirements has committed a misdemeanor SORA reporting violation, potentially giving rise to a six month period of incarceration, and that on the twelfth day, and each day thereafter for as long as the violation

persists, he or she has committed a new, separate Class D felony upon which consecutive sentences could be imposed.  Moreover, I was unable to locate any reported case from a New York court accepting respondent's theory regarding multiple prosecutions under section 168-4(f).  In short, I reject the respondent's position that each day after moving without providing notification Willette committed a new crime, and instead find that by convicting petitioner on four separate occasions for committing the same violation, and imposing sentences on those violations separately, the trial court violated petitioner's constitutional right against double jeopardy.

During oral argument of this matter, respondent's counsel also suggested that the court's inclination to find that petitioner had been convicted on four counts charging the same offense implicates a sufficiency of evidence argument which was not raised in the state courts, and thus is both unexhausted and procedurally forfeited.  While it is true that neither this argument nor the Fifth Amendment double jeopardy violation perceived by this court appear to have been raised in the state courts, I discern a basis to relieve petitioner of the otherwise harsh results of his failure to exhaust, finding that if left unremedied the violations would

30

result in a "fundamental miscarriage of justice – that is, where a person who is actually innocent has been convicted and incarcerated because of a constitutionally violation." *Murray v. Carrier,* 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2649 (1986).

Under these circumstances I recommend a finding that the Third Department's determination is both contrary to, or at best an unreasonable application of, clearly established Supreme Court precedent.  And, although it is arguable that petitioner did commit at one, and potentially two, separate acts in violation of N.Y. Correction Law § 168-f(4), because different sentences were imposed on the first of those counts vis-a-vis the latter three, I recommend that the conviction on counts two, four, six and eight be set aside, with leave to retry the petitioner consistent with this opinion.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The petitioner in this matter was convicted at trial of four separate reporting violations under the SORA.  Unquestionably, the proof at trial showed that Willette changed his address at a relevant point in time, and by law was required to notify authorities of that change of address, regardless of the level of his designation under the SORA, but failed to do

31

so.  Petitioner was convicted of four SORA reporting violations based upon a single instance of his failure to notify officials of that change of address within ten days, a fact directly attributable to his designation as a level three offender.  Since that designation resulted from a violation of due process, according to New York's highest court, and represented multiplicious prosecutions in violation of petitioner's right against double jeopardy, I recommend that the petitioner's constitutional protection on counts two, four, six, and eight, which are wholly dependent upon the ninety day reporting requirements associated with the level three designation, be overturned.

Addressing the four counts charging the filing of false instruments, I find that because the statute defining that offense does not require, as an element, that a defendant be required to file the form in issue, and the evidence adduced at trial sufficiently established that the instruments filed by the petitioner contained knowingly false information, his convictions on those four counts are not tainted by the due process violation associated with the SORA violations.  I therefore recommend against granting of habeas relief with regard to counts one, three, five and seven, each of which alleges the filing of a false instrument.

32

Based upon the foregoing it is hereby

RECOMMENDED that the petition in this matter be GRANTED with respect to his conviction on counts two, four, six and eight of the indictment against the petitioner, but that it otherwise be DENIED and DISMISSED, and that the matter be returned to the state courts for further proceedings consistent with this recommendation.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:      December 13, 2005
            Syracuse, NY

33